**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELDRED CLAYBROOKS, | ) |
| | ) Case No. 15 CV 3090 |
| Petitioner, | ) |
| | ) Judge Joan B. Gottschall |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Pro se movant Eldred Claybrooks ("Claybrooks"), sentenced after a trial to 120 months imprisonment, moves the court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Claybrooks first argues that trial counsel failed properly to advise him about the government's offer to allow him to plead to a charge with a four-year maximum sentence. He contends that his lawyer's financial interest in taking the case to trial created a conflict of interest. Second, Claybrooks contends that he asked his lawyer to obtain the government's plea offer in writing, but the lawyer did not do so. Third, Claybrooks argues that his lawyer did not adequately investigate the government's witnesses and that his lawyer failed to impeach key government witnesses. Fourth, Claybrooks says that his appellate lawyer was ineffective for failing to challenge the jury instructions. Finally, Claybrooks argues that his lawyer rendered ineffective assistance when he did not challenge a citation error in the government's information of a prior conviction used to enhance his sentence. *See* 21 U.S.C. § 851.

For the following reasons, the court will set an evidentiary hearing on Claybrooks' first claim, but the remaining claims are unavailing.

1

# I. Background

Claybrooks was charged in a multi-defendant, multi-count indictment with one count of conspiracy to possess with the intent to distribute and one count of distributing at least 500 grams of cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1); Indictment, R. 110.[1] Claybrooks retained the services of Mr. David R. Jordan ("Jordan"), and he represented Claybrooks through plea negotiations, trial, and sentencing. Jordan retired from the practice of law in 2014 following a one-year suspension of his license to practice in Illinois; the suspension was imposed based on his handling of a probate matter. *See* Jordan Aff. ¶¶ 3–4, ECF No. 11-2.

## A. <u>Pre-Trial Proceedings</u>

Before trial the government filed an information advising Claybrooks that it intended to rely on a prior drug felony conviction to seek an increased sentence. R. 249; s*ee* 21 U.S.C. §§ 841(b), 851. The information cited the wrong section of the Illinois Compiled Statutes (ILCS), however. It stated that Claybrooks was convicted in the Circuit Court of Cook County, Illinois, of possessing a controlled substance with intent to deliver on or about April 11, 1996. R. 249 at 1. The statute of conviction was listed as "720 ILCS 570/402(1[sic](c)(2)", *id.*, a subsection that does not, and did not, exist. Claybrooks concedes, and the record shows, that he was convicted of violating the preceding section of the Illinois Compiled Statutes, 720 ILCS 570/401(c)(2), on April 11, 1996, the date listed in the information, and sentenced to serve four years. *Compare* ECF No. 22 Ex. 1 at 21, *with* R. 249. No one brought this error to the court's attention prior to sentencing or on direct appeal.

The government attempted to negotiate a plea agreement under which Claybrooks would receive a four-year sentence. *See* Hr'g Tr. (Aug. 3, 2011), ECF No. 11-1 Ex. A at 3:8-11. The

---

[1] References to the record in 08 CR 1028-12 are designated R., followed by the docket number. References to the docket of this § 2255 proceeding are designated "ECF No." followed by the docket number.

maximum penalty for a violation of 21 U.S.C. § 843(b), commonly referred to as a "phone count," is four years.[2]  Jordan and the prosecutor both stated in open court that Claybrooks was informed of the consequences of going to trial.  Hr'g Tr. (Aug. 3, 2011), ECF No. 11-1 Ex. A at 3:2-18.  On one occasion the government offered the phone count plea deal to Claybrooks in a conversation held in the hallway.  Petition14 , ECF No. 1, Response 5, ECF No. 11; Jordan Aff. ¶ 14, ECF No. 11-2 Ex. B.  Claybrooks rejected the offer.  Petition 14, ECF No. 1; Jordan Aff. ¶ 14, ECF No. 11-2 Ex. B.

### B. Trial, Sentencing, and Direct Appeal

In 2011 the jury found Claybrooks guilty on both counts of drug conspiracy and drug distribution.  One of Claybrooks' co-defendants, Robert Atkins ("Atkins"), testified against Claybrooks.  He identified Claybrooks' voice on recordings of several phone calls played for the jury in which the callers arranged and discussed cocaine transactions.  *See United States v. Claybrooks ["Claybrooks I"]*, 729 F.3d 699, 702–03 (7th Cir. 2013) (summarizing trial evidence).  The court initially sentenced Claybrooks to serve 20 years, believing that sentence to be the mandatory minimum sentence for the drug quantity involved.  *See Claybrooks I*, 729 F.3d at 703.  Claybrooks appealed, raising two issues.  The Seventh Circuit first affirmed Claybrooks' conviction, holding that the evidence admitted at trial was sufficient to convict him of conspiring with Atkins to distribute cocaine.  *Id.* at 704–06.  But the Seventh Circuit remanded the case for clearer findings of the amount of drugs involved in the offense, for sentencing purposes, and

---

[2] Section 843(b) makes it a crime "knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II . . . . '[C]ommunication facility' means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes . . . telephone . . . ." 21 U.S.C. § 843(b).  The maximum penalty for a first offense is four years of imprisonment.  21 U.S.C. § 843(d)(1).

directed this court to apply the Supreme Court's then-recent[3] decision in *Alleyne v. United States*, 570 U.S. 99 (2013), on remand. *Claybrooks I*, 729 F.3d at 706–07. Applying *Alleyne*, this court determined that Claybrooks' mandatory minimum sentence was 10 years and held him responsible under the advisory sentencing guidelines for seven kilograms of cocaine. R. 639 at 39. Claybrooks' advisory guidelines sentencing range came to 135–68 months. *United States v. Claybrooks ["Claybrooks II"]*, 593 F. App'x 550, 552 (7th Cir. 2014). The court sentenced Claybrooks below that range to the 120-month mandatory minimum. Claybrooks again appealed. Believing there to be no nonfrivolous issues to appeal, Claybrooks' lawyer sought leave to withdraw and filed a brief under *Anders v. California*, 386 U.S. 738 (1967). The Seventh Circuit granted the motion and affirmed. *Claybrooks II*, 593 F. App'x at 552.

## C. <u>Motion to Vacate, Correct, or Set Aside Sentence</u>

Claybrooks' § 2255 motion, which he signed on March 31, 2015, was timely entered on the docket on April 7, 2015. The court ordered a response, ECF No. 4, and the government and Claybrooks submitted an initial round of briefing. Gov't Resp., ECF No. 11, Supplemented, ECF No. 17; Reply, ECF No. 21. The government attached to its response a purported affidavit of Jordan responding to Claybrooks' allegations. Jordan Aff., ECF No. 11-2 Ex. B. Jordan's affidavit is not signed, dated, or notarized. *Id.* Claybrooks then sought and obtained court permission to amend his § 2255 motion to add two additional grounds for relief and submit an affidavit responding to Jordan's. *See* Suppl. § 2255 Mot., ECF No. 22; Claybrooks Aff., *id.* at 28 Ex. 2. Claybrooks did not file a separate amended petition. Instead his motion for leave to supplement his petition, ECF No. 22, sets forth his supplemental grounds for relief. The

---

[3] The Supreme Court decided *Alleyne* after the oral argument was held in Claybrooks' first appeal. *Claybrooks I*, 729 F.3d at 707.

4

government filed a supplemental response. ECF No. 30. Claybrooks replied. ECF No. 31. And the government filed a surreply. ECF No. 32.

The surreply is properly before the court, and Claybrooks has responded to its substance. The government did not initially seek leave to file it. For this reason, Claybrooks apparently mailed the court two motions to strike the surreply. Those motions apparently crossed in the mail with the government's motion for leave to file its surreply. *See* ECF No. 39 (reciting this history). The court granted the government's motion for leave and gave Claybrooks an opportunity to respond to the surreply "[t]o avoid any confusion." *Id.* Claybrooks did not file a separate response to the surreply. Nevertheless, portions of Claybrooks' motions to strike, ECF Nos. 36, 37, respond to the substance of the surreply, so the court will treat those arguments as properly before it.

## II. Legal Standard

Under 28 U.S.C. § 2255, a person in custody for a federal criminal conviction may move to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a); *see also Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Post-conviction relief is "an extraordinary remedy" because a petitioner has already "had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). It is neither a substitute for a direct criminal appeal nor a means by which a defendant may appeal the same claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007).

Thus, if a movant fails to raise a claim on direct appeal, that claim is barred in a collateral proceeding under § 2255 unless the movant can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850–51 (7th Cir. 2009). Because claims of ineffective assistance of counsel usually involve evidence outside the trial record, they may be raised for the first time in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). When deciding a § 2255 motion, the court views the evidence "in a light most favorable to the government." *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000). "If 'the files and records of the case conclusively show that the prisoner is entitled to no relief,' or if the allegations are too vague and conclusory, then an evidentiary hearing is unnecessary." 28 U.S.C. § 2255(b) . . . . But if a petitioner 'alleges facts that, if true, would entitle him to relief,' then an evidentiary hearing is necessary." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016).

### III. Analysis

The court first considers the effect of Claybrooks' release from prison. The Bureau of Prisons' website shows that Claybrooks was released on July 3, 2019. Section 2255 permits a prisoner who is "in custody" to move to vacate, set aside, or correct a sentence. Claybrooks' release does not prevent this court from considering his § 2255 motion, however, because he was in custody when he filed it. The § 2255 "in custody" requirement applies only when the motion is filed; the court may decide the motion after the prisoner is released and even after any period of supervised release has ended. *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) and *Virsnieks v. Smith*, 521 F.3d 707, 717–18 (7th Cir. 2008)).

Claybrooks raises Sixth Amendment claims that he received ineffective assistance from his retained counsel. "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citation omitted). The two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), ordinarily governs ineffective assistance claims. *See id.* Under *Strickland*, the defendant must establish two things: (1) that "counsel's representation 'fell below an objective standard of reasonableness'" and (2) "that [the defendant] was prejudiced as a result." *Lee*, 137 S. Ct. at 1964 (quoting *Strickland*, 466 U.S. at 688). If Claybrooks fails to make a proper showing under one of the *Strickland* prongs, the court need not consider the other. *See Strickland*, 466 U.S. at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ."); *see also Amerson v. Farrey*, 492 F.3d 848, 851 (7th Cir. 2007).

Establishing prejudice under *Strickland* ordinarily requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Supreme Court has recognized, however, that in certain situations prejudice is presumed or the prejudice standard is relaxed. *Reynolds v. Hepp*, 902 F.3d 699, 704 (7th Cir. 2018) (citing *Bell v. Cone*, 535 U.S. 685, 695–96 (2002), which discussed three such circumstances); *see also Lee*, 137 S. Ct. at 1964–65 (discussing prejudice prong where claim is based on assistance during negotiations that result in a guilty plea). Applying these standards, the court dismisses Claybrooks' claims with the exception, discussed first, of his claim stemming from the government's offer of a plea agreement.

## A. <u>Trial Counsel's Ineffectiveness At The Plea Stage</u>

"[T]o succeed on a claim that counsel's ineffective assistance led him to reject the Government's plea offers, [a habeas movant] must show not only that [his attorney] acted in error, but also that–had [his attorney] provided competent advice–there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed." *Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013) (citing *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)).

Claybrooks must set forth "detailed and specific" facts rather than "vague, conclusory, or palpably incredible" allegations. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). "While there is a wide range of conduct that constitutes reasonable performance, an attorney's performance is deficient if the attorney grossly mischaracterizes the evidence or advises a client to reject a plea offer and go to trial in the face of overwhelming evidence and no viable defenses." *Torres-Chavez*, supra, 828 F.3d at 585.

Claybrooks contends that his attorney did not properly advise him about his sentencing exposure and the strength of the government's case against him, and if his attorney had given proper advice, he would have accepted the offer and pleaded to a "phone count." Again, an evidentiary hearing must be held "whenever the federal prisoner alleges facts that, if proven, would entitle him to relief." *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017) (citations omitted). Because a § 2255 movant has a "relatively light" burden to obtain an evidentiary hearing, one should be denied "only when the motion and records 'conclusively show' that the petitioner is not entitled to relief." *Id.* (citing 28 U.S.C. § 2255(b)). Given this

light burden, the court finds that an evidentiary hearing is appropriate to resolve the following issues.

Claybrooks provides a detailed narrative of Jordan's representation. *See* Claybrooks Aff., ECF No. 22 at 28 Ex. 2. As the Seventh Circuit has recently taken pains to emphasize, the court cannot discount Claybrooks' allegations or his affidavit merely because they might be self-serving. *Sawyer v. United States*, 874 F.3d 276, 279 (7th Cir. 2017) (citations omitted) (holding that an evidentiary hearing was required). Claybrooks states that Jordan's initial assessment of the case was that the government had "no evidence" against Claybrooks, that he was "interested in going to trial because he believed he could demonstrate that most of the specific allegations were not true." Petition at 13. Claybrooks also maintains that prior to trial, Jordan never explained the case against him or made any assessment of the evidence, that Jordan characterized the government's case as weak, and that he said that there was "no evidence" against Claybrooks. Petition at 14. Claybrooks tells the court that the offer to plead to a "phone count" was conveyed to him by the prosecutor during a discussion in the hallway; it was mentioned again in open court on August 3, 2011. Suppl. Resp. 13, ECF No. 22; *see also* Claybrooks Aff. ¶¶ 5, 7, 8–9, ECF No. 22 at 28 Ex. 2. Claybrooks avers that he directed Jordan to get the government's plea offer in writing, but he never did. Claybrooks Aff. ¶ 10, ECF No. 22 at 28 Ex. 2. Finally, Claybrooks contends that he considered Jordan's characterization of the evidence against him as weak to be implicit advice to reject the plea offer. *See id.* ¶ 11.

Claybrooks also claims in his supplemental petition that Jordan labored under a conflict of interest, citing the fact that Jordan was paid for his services. Jordan appeared to Claybrooks to be "more interested in milking Claybrooks for more money" than obtaining a plea offer. ECF No. 22 at 12 n.3; *see also id.* at 10–16; Claybrooks Aff. ¶¶ 4, 14, ECF No. 22 at 28 Ex. 2

(averring that each time the two spoke Jordan brought up money and his belief that the lawyers representing Claybrooks' co-defendants were being paid more than Jordan).

Jordan tells a quite different story in his unsworn "affidavit." He avers that initially he was skeptical about the government's evidence because of the (apparently unexplained) delay in producing it. Jordan Aff. ¶ 11, ECF No. 11-2 Ex. B. Jordan avers that he became convinced that the evidence against Claybrooks was overwhelming and that he "urged" Claybrooks to accept the phone count. *Id.* ¶ 10. Jordan continued to try to get Claybrooks to accept the offer of pleading to the phone count until the day of trial, but Claybrooks refused because he believed that no co-defendant would testify against him, even though Jordan told him that the government listed Atkins as a witness. Jordan Aff. ¶¶ 11, 12, 15.

Contrary to Claybrooks' argument, the differences in sentencing exposure Claybrooks faced do not alone establish prejudice. Claybrooks was aware that he faced a four-year maximum sentence if he pleaded guilty to the phone count but risked exposure to a 20-year sentence if he went to trial because the government recited these things in open court in Claybrooks' presence before trial. *See* Hr'g Tr. (Aug. 3, 2011), ECF No. 11-1 Ex. A at 3:2-11; *Cf. United States v. Edwards*, 606 F. App'x 851, 853 (7th Cir. 2015) ("[E]ven if we assume that Edwards can show deficient performance from his lawyer's failure to communicate the existence and content of an offer of a plea bargain, . . . he cannot show prejudice . . . . As suggested by the Court in *Frye*, the government disclosed the plea offer in open court, thereby ensuring that Edwards was fully advised of it.") (internal citations omitted). Furthermore, Claybrooks states in his petition that he "considered pleading to the phone count to avoid the risk of being found guilty by a jury because [of] all the inflammatory evidence." Petition at 14. Relevant to his allegation that he would have accepted the phone count plea offer is his insistence of innocence

during sentencing and his reluctant acceptance of responsibility at resentencing. *See Foster*, 735 F.3d at 566–67 (collecting cases holding that a movant seeking § 2255 relief based on alleged ineffective assistance of counsel relating to a plea offer "must offer objective evidence that he would have accepted the plea agreement but for his attorney's poor performance . . . .").

The court also dismisses Claybrooks' argument that Jordan was ineffective for not getting the offer to plead to a phone count in writing. The court knows of no law requiring a plea offer to be in writing, and Claybrooks cites none. Claybrooks admits that he understood the terms of the verbal offer, and those terms were put on the record at the August 3, 2011, hearing.[4] *See* Suppl. Resp. 13–14 & n.4. Claybrooks identifies nothing about a written plea offer that would have made him more likely to accept it. *See id.* Thus, neither *Strickland* prong is satisfied. *See United States v. Mitchell*, 846 F.3d 937, 946–47 (7th Cir. 2017) (no deficient performance or prejudice where lawyer communicated the material terms of an oral plea offer and defendant rejected "general framework" of the offer).

Still, the substantial factual conflicts here require an evidentiary hearing. Notably, in *Sawyer v. United States*, 874 F.3d 276, 278 (7th Cir. 2017), the § 2255 movant alleged that he received a plea offer that would have exposed him to a 15-year maximum sentence. On his lawyer's advice, and after discussing the offer with family, he rejected it, went to trial, and ultimately received a 50-year sentence. *Id.* The Seventh Circuit held that an evidentiary hearing was required because, if true, the petitioner's allegations would be enough to show that he received ineffective assistance of counsel. *Id.* at 279–80.

---

[4] Because the offer was conveyed to Claybrooks in open court, it could have been reduced to writing by ordering a transcript of the hearing. As already discussed in the text, the transcript shows that the government stated in open court that an offer to plead to a count carrying a maximum four-year sentence had been extended and that Claybrooks faced a 10-year mandatory minimum if he went to trial. See Hr'g Tr. at 3:2-18, Aug. 3, 2011, ECF No. 11-1 Ex. A.

Similarly, the Seventh Circuit held in *Torres-Chavez v. United States*, *supra*, that an evidentiary hearing was necessary to determine whether trial counsel was in fact aware of the strength of the government's evidence, later admitted at trial, when he advised the defendant to reject a plea offer. 828 F.3d at 585–86. On the other hand, an evidentiary hearing is not necessary if the government's evidence against the petitioner was so weak that the lawyer's advice to reject a plea offer would have been reasonable regardless of what the lawyer knew about the evidence. *Almonacid*, 476 F.3d at 518 (7th Cir. 2007).

The evidence admitted at trial here was strong enough to make Jordan's knowledge of it relevant. In *Almonacid*, there was no forensic or photographic evidence, no wiretaps, and no witness who had observed Almonacid's alleged criminal activity. In *Torres-Chavez*, by contrast, the government called multiple fact and expert witnesses at trial; the government played phone-call recordings of the defendant; and incriminating records of flights taken by the defendant were introduced. *Torres-Chavez*, 828 F.3d at 585. The evidence admitted at Claybrooks' trial was nearly as strong. Indeed, Jordan describes it as "overwhelming." Jordan Aff. ¶ 10, ECF No. 11-2 Ex. B. Similar to the evidence in *Torres-Chavez*, the trial evidence here included a co-defendant's testimony and recordings of incriminating phone calls on which Claybrooks' voice was identified. *See Torres-Chavez*, 828 F.3d at 585 (distinguishing *Almonacid* because the evidence against Almonacid was not strong . . . ."). Because Jordan does not say when he became aware of the government's evidence, an evidentiary hearing must be held. *See id.*; Jordan Aff. ¶ 9 (averring only that the government delayed in making evidence available).

In sum, factual disputes exist over what Claybrooks and Jordan communicated during plea negotiations, and nothing in the record illuminates when Jordan knew of the evidence the

government introduced at trial.[5]  Consequently, an evidentiary hearing "is necessary" to resolve

Claybrooks' claims of ineffective assistance in plea negotiations.  *Torres-Chavez*, 828 F.3d at

585 (emphasizing that the *Strickland* inquiry focuses on what the lawyer "knew when the plea

was rejected") (citing *Premo v. Moore*, 562 U.S. 115, 125–27 (2011)) (other citations omitted);

*see also Sawyer*, 874 F.3d at 280.

### B. Ineffective Assistance at Trial And At Sentencing

Claybrooks next argues that Jordan was ineffective for failing to hire an investigator prior

to trial.  Petition at 18–20.  "[A] petitioner alleging that counsel's ineffectiveness was centered

on a supposed failure to investigate has the burden of providing the court sufficiently precise

information, that is, 'a comprehensive showing as to what the investigation would have

produced.'"  *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (citing *United States

ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990)); *see also United States v.

Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011).  Here, Claybrooks has failed to specify what

information, if any, his counsel would have uncovered if he had conducted an investigation.

Accordingly, Claybrooks is not entitled to relief on this ground.

Claybrooks also argues that Jordan was ineffective for failing to impeach Atkins at trial.

Claybrooks asserts that "[a]n attorney attempting to defend the most critical issue would have, at

a minimum, engaged in a dialogue with Mr. Atkins about his inconsistent trial testimony that

suggested that he tailored his testimony to create a narrative more favorable to the government."

Petition at 21–22.  However, the trial transcript refutes Claybrooks' contention.  It shows that

Jordan cross examined Atkins about inconsistencies between his trial and grand jury testimony

---

[5] Claybrooks claims that his lawyer had a financial conflict of interest in that he would make more money if the case went to trial, as opposed to terminating in a plea.  The court is skeptical of such a claim.  If Claybrooks wishes to press this issue, his lawyer should be prepared to provide case law and argument.

and about his hope to obtain a reduced sentence by testifying—up to a 40% recommended reduction. [6] *See* 2 Trial Tr. at 174:20-175:3, R. 526. Further belaboring these points would likely have drawn a successful objection from the government to argumentative or repetitive questioning. Therefore, Claybrooks' counsel was not ineffective for failing to pursue the cross examination any further.

Next, Claybrooks argues that Jordan was ineffective when he failed to object to the Presentence Investigation Report's ("PSR") reliance on the proffer of Robert Wasp, one of Claybrooks' co-conspirators, in calculating the amount of narcotics attributable to Claybrooks at sentencing. Petition at 22–23. As the government points out, the court sentenced Claybrooks to the 10-year mandatory minimum, and thus any such error did not prejudice Claybrooks. *See United States v. Woods*, 233 F.3d 482, 486 (7th Cir. 2000) (prejudice could not be shown because "no matter how well counsel performed there was no lesser sentence available to [the defendant] under the mandatory sentence provisions . . . .").

Claybrooks' final argument concerns the government's information of a prior conviction, R. 249, which advised him that the government intended to rely on a 1996 conviction to enhance his sentence. The parties agree that the information contained a citation error. It correctly identified the date of the offense, listed the correct case number, and accurately described the offense as manufacturing or delivering controlled substances. *See* R. 249 at 1. But the digits in the section and subsection number of the statute of conviction were incorrect. *Compare* ECF No. 22 Ex. 1 at 21 (720 ILCS 570/401(c)(2),), *with* R.249 at 1. Claybrooks contends that Jordan

---

[6] Jordan: Now, you talked about you were going to get some benefit for – you were going to get some benefit from the Government for coming here to tell the truth today, didn't you?
Atkins: Yes. they was going to suggest 40 percent off.
Jordan: Well now, wasn't the original suggestion 210 to 262 months in prison, and if you cooperated, that you'd get ten years, six months?
Atkins: Yes.

was ineffective for failing to challenge the information based on this mistake and contends that his due process rights were violated at sentencing. Suppl. § 2255 Mot. 7, 8, ECF No. 22.

The due process argument fails on its own terms. Claybrooks relies on *Townsend v. Burke*, 334 U.S. 736, 741 (1948), which held that a self-represented defendant's due process rights were violated when he was "sentenced on the basis of assumptions concerning his criminal record which were materially untrue." The record in *Townsend* showed that the sentencing court, at a very abbreviated hearing, incorrectly stated that the defendant had been convicted of charges that had either been dismissed or of which he had been acquitted. *See id.* at 739–40. Here, however, the error in the information was not material. Claybrooks admits the fact that he was convicted and that the information contained only a citation error. *See* Suppl. Reply 4, ECF No. 31.

For the same reason, Claybrooks correctly concedes that he cannot establish prejudice under *Strickland*. *Id.* The governing statute requires the defendant to challenge an information of a prior conviction before sentencing or be sentenced based on the offense described in the information. *See* 21 U.S.C. §§ 851(c), 851(d). Claybrooks has filed records confirming that in 1996 he was convicted for manufacturing and delivering a controlled substance in violation of 720 ILCS § 570/401(c)(2). ECF No. 22 at 46. Thus, had the citation error in the information been noticed before sentencing, it would have been correctable under Section 851, which expressly allows "correction of clerical errors [in an information] at any time prior to the pronouncement of sentence." 21 U.S.C. § 851(a)(1). A clerical error may be corrected if "the information serves to convey the Government's intent to seek an enhancement based on a particular earlier conviction." *United States v. Curiale*, 390 F.3d 1075, 1076-77 (8th Cir. 2004) (quoting *Perez v. United States*, 249 F.2d 1261, 1264 (11th Cir. 2001)); *see also United States v.*

*Arreola-Castillo*, 539 F.3d 700, 704 (7th Cir. 2008) (citing *Curiale* with approval in published decision). Since the information here adequately identified the conviction on which the government relied, Claybrooks cannot show prejudice. *See United States v. Arreola-Castillo*, 539 F.3d at 704 (holding information identifying incorrect state of conviction was clerical error); *United States v. Pirtle*, 333 F. App'x 108, 110 (7th Cir. 2009) (unpublished) (mislabeling prior conviction as possession of lookalike substance was clerical error because the information "conveyed the government's intent to seek an enhancement and identified the correct case number, jurisdiction, and classification of offense").

### C. Appellate Counsel's Ineffectiveness

Claybrooks next claims that his appellate counsel was ineffective for failing to argue that the jury should have been given an instruction distinguishing a conspiracy from a buyer-seller relationship. Petition 24. This argument fails because the record shows that Jordan requested, and the jury received, an adequate instruction on this issue.

The two-prong *Strickland* test applies to ineffective assistance of appellate counsel claims. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). The first *Strickland* prong may be satisfied by showing that the lawyer did not raise an obvious argument that was clearly stronger than the arguments raised on appeal. *See id.*; *Sanders v. Cotton,* 398 F.3d 572, 585 (7th Cir. 2005). The court must examine the record to determine whether appellate counsel omitted "significant and obvious" issues on appeal. *See Stallings v. United States,* 536 F.3d 624, 627 (7th Cir. 2008). To establish the *Strickland* prejudice prong, Claybrooks must show that there is a reasonable probability that, but for his appellate counsel's deficient performance, the result of the appeal would have been different. *See Suggs,* 513 F.3d at 678; *Lee v. Davis,* 328 F.3d 896,

901 (7th Cir. 2003). "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Claybrooks maintains that his appellate lawyer should have argued that the jury instructions did not conform to a 2012 Seventh Circuit pattern jury instruction on the buyer-seller relationship:[7]

> A conspiracy requires more than just a buyer-seller relationship between the defendant and another person. In addition, a buyer and seller of [name of drug] do not enter into a conspiracy to [distribute [name of drug]; possess [name of drug] with intent to distribute] simply because the buyer resells the [name of drug] to others, even if the seller knows that the buyer intends to resell the [name of drug]. The government must prove that the buyer and seller had the joint criminal objective of distributing [name of drug] to others.

Pattern Criminal Jury Instructions of the Seventh Circuit § 5.10(A) (2012 Ed.) (brackets in original). This instruction tracked the language of case law distinguishing a buyer-seller relationship from a conspiracy. *See United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir. 1993) (en banc). In *United States v. Pedigo*, the Seventh Circuit held that "a standard instruction on the elements of a conspiracy is not sufficient to inform the jury of the defendant's theory of the case." 12 F.3d 618, 626 (7th Cir. 1993).

Claybrooks cannot show prejudice or deficient performance, however, because the court did not give "a standard instruction on the elements of a conspiracy." *See id.* The jury was instructed properly on the difference between a conspiracy and a buyer-seller relationship:

> A conspiracy to distribute drugs or to possess drugs with intent to distribute requires more than simply an agreement to exchange drugs for money.
>
> What is necessary is proof of an agreement to commit a crime other than the crime that consists of the sale itself.

---

[7] Rayford M. Starr represented Claybrooks on appeal. He filed his opening brief on November 9, 2012, a little more than a month after the Seventh Circuit published its 2012 pattern jury instructions.

Final Jury Instructions 32, R. 439; 3 Trial Tr. at 290:12-16, R. 527 (oral instruction read to jury word-for-word).

Claybrooks' appellate counsel was not ineffective for failing to challenge this jury instruction. Neither was Jordan ineffective in this regard. At the jury instruction conference, he requested and advocated for an instruction similar to the one ultimately given. *See* 3 Trial Tr. at 223:1–234:20, R. 527.

Last, as part of his argument that the jury instructions were inadequate, Claybrooks repeats certain sufficiency of the evidence arguments he made on direct appeal. Specifically, he argues that the evidence was insufficient for the jury to find that he and Atkins formed a conspiracy. These arguments were properly raised on direct appeal, and the Seventh Circuit rejected them. *Claybrooks I*, 729 F.3d at 703, 704–06. This § 2255 habeas proceeding is neither a substitute for a direct criminal appeal nor a means in which to rehash issues decided on appeal. *See Varela*, *supra*, 481 F.3d at 935. Therefore, Claybrooks' claim for relief is denied.

### IV. Conclusion

For the reasons stated, Claybrooks petition and supplementation petition under 28 U.S.C. § 2255 are dismissed with the exception of the claim discussed in Part III.A. Due to the need to conduct an evidentiary hearing, the court intends to appoint counsel to represent Claybrooks so long as he demonstrates that he is presently unable to afford counsel. The Federal Defender Program is appointed for the limited purpose of assisting Claybrooks with proving, assuming that he can, that he is eligible for appointed counsel.


Date:   August 1, 2019                          _____/s/_____
                                                Joan B. Gottschall
                                                United States District Judge